IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06CV273-MU-02

MICHAEL McKEE,                )
    Petitioner,           )
                              )
    v.                        )                  <u>ORDER</u>
                              )
JOSEPH HALL, (Admin. of )
  Harnett Correctional    )
  Institution,            )
      Respondent.         )
_____)

**THIS MATTER** comes before the Court on Petitioner's Petition for a Writ of <u>Habeas Corpus</u> under 28 U.S.C. §2254 (doc. # 1), filed June 30, 3006; on Respondents' Motion for Summary Judgment (doc. # 8), filed November 14, 2006; and on Petitioner's summary judgment motion[1] (document # 21), filed July 3, 2007. For the reasons stated herein, and for the further reasons stated in Respondent's Supporting Brief, Petitioner's summary judgment motion will be <u>denied</u>; Respondent's Motion for Summary Judgment will be <u>granted</u>; and Petitioner's Petition for a Writ of <u>Habeas Corpus</u> will be <u>denied</u> and <u>dismissed</u>.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

---

[1] The caption on this document merely is "Summary Judgment." Therefore, the Court will refer to it as Petitioner's summary judgment motion.

1

According to the documents submitted by the parties, on September 5, 2001, Petitioner pled guilty pursuant to a plea arrangement to two counts of assault with a deadly weapon, inflicting serious injury, and to one count of breaking and entering. On that occasion, the Superior Court of Union County imposed consecutive sentences of 29 to 36 months imprisonment on the assault convictions, and a 6-8 month term on the breaking and entering conviction, both terms suspended for five years. The Court also placed Petitioner on probation in lieu of his active sentences and ordered him to comply with certain conditions.

Next, on or about July 23, 2003 -- and prior to the expiration of his 2001 de facto probationary term, Petitioner was arrested on charges of assault-on-a-female (his wife), and assault with a deadly weapon. On March 15, 2004, while those 2003 assault charges still were pending with the Court, a Probation Violation Report was filed, asserting that Petitioner had committed multiple violations of his probation, including his August 2003 arrest on the assault charges.

On or about March 3, 2005, a Probation Violation and Revocation Hearing was held, during which Petitioner's wife and son both testified concerning the assault, and the State presented evidence concerning the other violations. At the conclusion of that proceeding, the Court determined that Petitioner had, in fact, violated his probation as reported in the Violation Report,

2

and so revoked his probation. As a consequence, the Court activated Petitioner's suspended sentences on his 2001 convictions and imposed two concurrent 29 to 36 month terms for the original assault convictions, and a consecutive term of 6 to 8 months on the breaking and entering conviction.

Equally critically, on March 10, 2005, Petitioner pled guilty to the two 2003 assault charges. In accordance with his plea arrangement, the Court consolidated the offenses for judgment and sentenced Petitioner to a single term of 10 to 12 months imprisonment, to be served concurrently with the sentences he already was serving. However, on October 19, 2005, the Honorable Susan C. Taylor entered a corrected and amended Judgment for Petitioner, reducing his newly activated sentences on the 2001 assault convictions from 29 to 36 months to 22 to 36 months imprisonment.

On February 16, 2006, Petitioner returned to the Superior Court of Union County with a Motion for Appropriate Relief. By that Motion (along with its amendments), Petitioner made several arguments which can be summarized as claims that: (1) his 2001 probationary sentences unlawfully were revoked because the trial court lacked subject matter jurisdiction to revoke him on the basis of the pending assault charges and, in any case, the evidence was of his violations was insufficient to support revocation; (2) he had newly discovered evidence (affidavits from his

3

wife and son) which established his actual innocence to the 2003 assault charges; and (3) he was subjected to ineffective assistance in that trial counsel coerced him into pleading guilty to those assault charges.

However, on April 20, 2006, the MAR Court denied each of Petitioner's claims. Specifically, the MAR Court found that the revocation of Petitioner's suspended sentences for his 2001 convictions was "based upon multiple violations . . ."; therefore, the trial Court's consideration of the assault-on-a-female charge was "immaterial." Moreover, the MAR Court noted that the evidence which was presented in support of revocation was sufficient to make the judges "reasonably satisfied" that Petitioner had committed the cited violations; and that Petitioner's belated assertions of "actual innocence," were insufficient to overcome the sworn statements which he made during his guilty plea hearing. Therefore, the MAR Court concluded that Petitioner was not entitled to any relief on those allegations.

Concerning his claim of newly discovered evidence, the MAR Court found that the affidavits which Petitioner submitted "fail-[ed] to meet the applicable standard . . ." of establishing that a new trial would result in a different outcome. Therefore, that claim also was rejected.

Last, the MAR Court determined that Petitioner's affidavits failed to establish either deficient performance or prejudice by

4

defense counsel.  Consequently, Petitioner's claims of ineffec-
tiveness were rejected.  Then, on June 12, 2006, Petitioner's
Petition for a Writ of Certiorari summarily was denied by the
North Carolina Court of Appeals.

Consequently, on June 30, 2006, Petitioner filed the instant
federal Habeas Petition.  In this Court, Petitioner alleges that
his due process rights were violated because the trial court
lacked jurisdiction to revoke his probation based upon the 2003
assault charges for which he had not yet been convicted; that the
prosecutor engaged in misconduct; that the witnesses who testi-
fied in support of his 2003 assault convictions (his wife and
son) had recanted their allegations, thereby exonerating him of
those offenses; and that he trial attorney was ineffective in two
distinct instances.

However, on November 14, 2006, Respondent filed an Answer
denying all of the material aspects of Petitioner's allegations.
Also on that date, Respondent filed a Motion for Summary Judgment
contending that he is entitled to a judgment as a matter of law.
Specifically, Respondent asserts first that the State court's
determination that the trial court had the authority to revoke
Petitioner's probation on the basis of the 2003 pending charges
simply is not subject to federal review and, therefore, is
entitled to deference.

Second, Respondent argues that the statute pursuant to which

Petitioner's probation was revoked did not require that he first be convicted of the new charges before a revocation could occur; that such revocation implicitly is supported by Petitioner's post-revocation guilty pleas to the subject assault charges; and that counsel could not have been ineffective for having chosen not to challenge the trial court's authority to revoke probation.

Next, concerning Petitioner's claims of prosecutorial misconduct and actual innocence, Respondent argues that Petitioner's guilty pleas to the 2003 assault charges stand as a waiver to his right to challenge the constitutionality of any matters which allegedly took place prior to the entry of that plea. In any event, Respondent contends that Petitioner's belated assertions of actual innocence -- as supported by his Affidavit and the Affidavits of his wife and son –- simply are insufficient to overcome his earlier sworn representations of guilt. In fact, Respondent points out that the U.S. Supreme Court previously has noted that recanted testimony very often is unreliable and properly is viewed with great suspicion. Therefore, Petitioner is not entitled to rely upon those documents as the sole proof of his claims of prosecutorial misconduct and actual innocence.

Last, Respondent argues that to the extent that Petitioner is arguing that counsel was ineffective in connection with his performance on the 2003 assault charges, such claim is belied by the record. Therefore, Respondent asks the Court summarily to

dismiss Petitioner's Petition and enter a judgment in his favor.

Notwithstanding the fact that this Court entered an Order directing Petitioner to respond to Respondent's Motion for Summary Judgment (see document # 22), Petitioner has failed to do so. However, Petitioner did file his own Summary Judgment motion (document # 21), first arguing that certain portions of the documents submitted by Respondent are incomplete and/or incorrect in that one exhibit reports that he had his probation revoked on more than one occasion. Although Petitioner acknowledges that Judge Susan Taylor did enter an amended revocation order by which she corrected an error in the original revocation order, he contends that she did not preside over any revocation proceeding. Petitioner argues that the MAR Court erroneously upheld his revocation on the mistaken belief that Judge Taylor actually revoked his probation. Therefore, Petitioner claims that the MAR Court's decisions on his claims was erroneous, and is not entitled to a presumption of correctness. (See Resp. Supp. Brief 1, document # 9).

Further, Petitioner rehashes his claim that the State court lacked jurisdiction to revoke his probation; that the prosecutor engaged in misconduct; and that his attorney was ineffective. In addition to those matters, Petitioner denies that his guilty plea tacitly waived his right to challenge the trial court's authority to revoke his probation on the pending charges; and he

7

argues that one of his other violations of the conditions of his probation, i.e., his failure to complete the educational/ therapeutic counseling at a residential half-way house was due to his arrest on the 2003 assaults not because he willfully failed to comply.

Curiously, Petitioner's Summary Judgment motion also takes issue with certain findings which this Court made in a June 4, 2007 Order (document # 19), by which it denied several of Petitioner's pre-trial Motions. Petitioner surmised that the Court made an effort to distort the factual issues because "a judicial complaint was filed prior to the order . . . ." However, those arguments properly cannot be used to support his request for summary judgment; therefore, they do not require any further discussion from the Court.

In any case, this Court carefully has reviewed Petitioner's allegations, the relevant legal precedent and the parties' opposing Motions for Summary Judgment. On the basis of that consideration, the Court has determined that Petitioner has failed to establish an entitlement to relief on any of his claims. Therefore, the instant Petition must be denied and dismissed.

## II. ANALYSIS

### A. Standard of review for habeas petitions.

Generally speaking, the standard of review to be applied by the Court to habeas cases is "quite deferential to the rulings of

the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). Indeed, as the Burch Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. §2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. . . ."

Id. (internal citations omitted).

The Supreme Court has explained that a State court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch. An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

The applicable standard of review is to be applied to "all

9

claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.23d 445, 455 (4th Cir. 1999).

### B. **Petitioner's claims concerning the trial court's authority to revoke his suspended sentence/probation are baseless**.

Petitioner claims that the trial court lacked authority to revoke his 2001 probation on the basis of his having only been charged, not convicted, of the 2003 assault offenses. However, even assuming that this claim now is cognizable, the same still fails for lack of merit.

At the outset of this analysis, the Court notes that Petitioner has failed to direct its attention to a single source of legal precedent to support his argument that the trial court lacked the authority to revoke his probation on the basis of new charges for which he had not yet been convicted. However, inasmuch as federal habeas relief clearly cannot be granted based upon mere suppositions, this failure by Petitioner, standing alone, is an adequate basis upon which to reject his claim.

Second, notwithstanding Petitioner's failure, the Court notes that the record contains a copy of the Probation Violation Report which lists Petitioner's violations as: (1) his failure to make payments on the fine which was assessed; (2) his failure to complete the required "evaluation, counseling, treatment or

education" as ordered; (3) his failure to undergo anger management treatment as ordered; <u>and</u> (4) his having been arrested for the August 2003 assault charges. During the Revocation Hearing, Petitioner's wife and son gave testimony which substantiated his guilt on the assault charges. In addition, the State presented proof of Petitioner's violation of the other conditions. As a result, the trial Court determined that Petitioner had violated his probation as alleged, and entered a Judgment reporting that "each violation [was], in and of itself, a sufficient basis upon which the Court should revoke probation and activate the suspended sentence." <u>See</u> Resp. Supp. Brief, ex 9-2.

Thus, even if the trial court lacked the authority to revoke Petitioner's probation merely on the basis of the pending assault charges, Petitioner still cannot prevail because he has failed to establish that he did not commit the other violations, and that such other violations did not sufficiently support the revocation. Furthermore, it goes without saying that since Petitioner's probation properly was revoked under these circumstances, he cannot possibly establish that he was prejudiced by counsel's decision not to challenge the revocation.

### C. **Petitioner's remaining claims also fail**.

By his remaining claims, Petitioner alleges that he actually is innocent of the 2003 assault charges and he erroneously was convicted of those offenses on the basis of his wife and son's

11

false testimony; that the prosecutor engaged in misconduct by twisting/altering the two witnesses' statements and by "shopping" around until he found a judge who was willing to revoke his probation; and that his defense attorney was ineffective for having coerced him into pleading guilty to the 2003 assault charges.

Turning first to the claim that counsel coerced him into pleading guilty to the 2003 charges, the Court finds that such allegation entirely is belied by Petitioner's earlier sworn statements to the contrary. Indeed, as Respondent has noted, at the time that he tendered his guilty pleas to the trial Court, Petitioner was placed under oath and questioned at length to ensure the intelligence and voluntariness of his guilty pleas.

To that end, the "Transcript Of Plea" form which Respondent submitted as exhibit 3 establishes that during the Hearing, Petitioner swore to the Court, <u>inter alia</u>, that he and counsel had discussed the charges and possible defenses to them; that he understood his rights to plead not guilty and proceed to trial; that he was, in fact, guilty of the offenses and was tendering his guilty pleas because he deemed the pleas to be in his best interest; that other than his plea arrangement, no one had made him any promises, and no one had made any threats in order to induce his guilty pleas; that he was entering his guilty pleas of his "own free will, fully understanding what [he was] doing"; and that he was "satisfied with [his] lawyer's legal services."

The law is clear that in evaluating a post-guilty plea claim of ineffective assistance of counsel, statements previously made under oath affirming satisfaction with counsel, such as those made by Petitioner, are binding absent "clear and convincing evidence to the contrary." Fields v. Attorney Gen. Of Md., 956 F.2d 1290, 1299 (4th Cir. 1992), citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977)); accord United States v. Lemaster, 403 F.3d 216, 220-23 (4th Cir. 2005) (affirming summary dismissal of §2255 motion, including ineffective assistance claim, noting the claim's inconsistency with statements made during Rule 11 hearing). In the instant case, Petitioner has failed to allege the existence of any extrinsic evidence which could undermine his earlier sworn statements affirming both the voluntariness of his guilty pleas and his satisfaction with counsel. Therefore, this claim also must be flatly rejected.

As to the claims of actual innocence/recanted testimony and prosecutorial misconduct, notwithstanding the post-conviction affidavits from Petitioner, his wife and his son, the Court has determined that he still is not entitled to any relief. Rather, as the record clearly establishes, the alleged instances of false testimony and prosecutorial misconduct all occurred prior to the time that Petitioner knowingly and voluntarily pled guilty to the assault charges. In this case, therefore, the well-settled principle of waiver is applicable to this allegation. That is,

13

the law is clear that a "voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations," Fields, 956 F.2d at 1294, citing Tollett v. Henderson, 411 U.S. 258, 266-67 (1973). To put it simply, Petitioner waived his right to challenge the instant errors by virtue of his guilty plea; therefore, the this Court has no authority to consider those allegations.

### III. CONCLUSION

In sum, this Court has determined that Petitioner has failed to demonstrate that the State Court's adjudication of his claims was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court. Thus, Petitioner's Petition must flatly be rejected.

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That Petitioner Summary Judgment is **DENIED;**

2. That Respondent's Motion for Summary Judgment is **GRANTED;** and

3. That Petitioner's Petition for a Writ of Habeas Corpus is **DENIED** and **DISMISSED.**

**SO ORDERED.**

Signed: March 24, 2009

Graham C. Mullen
United States District Judge